B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON, | DEFENDANTS<br>ANDREW PAUL WILLIAMS, |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Martin A. Eliopulos, Esq.<br>Higgs Fletcher & Mack LLP<br>401 West A Street, Suite 2600<br>San Diego, CA 92101<br>619.236.1551 | ATTORNEYS (If Known)<br>Ronald E. Stadtmueller<br>10755 Scripps Poway Pkwy., #370<br>San Diego, CA 92131<br>858.564.9310 |
| PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
This is a complaint to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and/or (a)(6) in the above captioned Chapter 7 case of Debtor, ANDREW WILLIAMS ("Debtor").

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 200,000.00 |

Other Relief Sought

**B1040 (FORM 1040) (12/24)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>ANDREW PAUL WILLIAMS | BANKRUPTCY CASE NO.<br>24-03761-CL7 | | |
| DISTRICT IN WHICH CASE IS PENDING<br>SOUTHERN DISTRICT OF CALIFORNIA | DIVISION OFFICE<br>Dept. 1 | | NAME OF JUDGE<br>Hon. Christopher B. Latham |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Martin A. Eliopulos | | | |
| DATE<br>01/06/2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>MARTIN A. ELIOPULOS, ESQ. | | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

MARTIN A. ELIOPULOS, Esq. (Bar No. 149299)
elio@higgslaw.com
JAKE D. SESTI, Esq. (Bar No. 339005)
sestij@higgslaw.com
**HIGGS FLETCHER & MACK LLP**
401 West A Street, Suite 2600
San Diego, CA 92101-7913
Tel: 619.236.1551
Fax: 619.696.1410

Attorneys for Plaintiffs
ERIK ANDERSON, NICK ASHTON and
SANDRA ASHTON

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW PAUL WILLIAMS<br><br>Debtor. | Case No. 3:24-bk-03761-CL7<br><br>Chapter 7 |
| ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW PAUL WILLIAMS,<br><br>Defendant. | Adversary Case No.<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT [11 U.S.C. § 523(a)(2)(A) and (a)(6)]**<br><br>Dept.:        1<br>Judge:      Hon. Christopher B. Latham |

Plaintiffs, ERIK ANDERSON, NICK ASHTON, and SANDRA ASHTON (collectively "Plaintiffs"), allege as follows:

1.      This is a complaint to determine the dischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) and/or (a)(6) in the above captioned Chapter 7 case of Debtor, ANDREW PAUL WILLIAMS ("Debtor").

2.      This dispute centers around a fraudulent scheme perpetrated by Debtor, CAR WASH MANAGEMENT, LLC, and JANETTE A. WILLIAMS (collectively, the "State Court Defendants"), to convert and steal $200,000.00 from the Plaintiffs under the guise of opening a car wash in West Covina, California to generate revenue and income for the Plaintiffs.  Unfortunately, the car wash never opened, and the State Court Defendants absconded with the plaintiffs' money.  Debtor has now filed

12756260.1

Chapter 7 bankruptcy and seeks to discharge the debt he owes the Plaintiffs. Accordingly, the Plaintiffs seek the Court's assistance in determining whether the debt owed by Debtor to Plaintiffs is nondischargeable pursuant to the bankruptcy code sections set forth above.

## I.

## PARTIES

3.     Erik Anderson ("Erik") is and at all relevant times was an individual residing in the County of San Diego, State of California.

4.     Nick Ashton ("Nick") is and at all relevant times was an individual residing in the County of San Diego, State of California.

5.     Sandra Ashton ("Sandra") is and at all relevant times was an individual residing in the County of San Diego, State of California.

6.     Debtor is and at all relevant times was an individual residing in the County of San Diego, State of California.

7.     Janette A. Williams ("Janette") is and at all relevant times was an individual residing in the County of San Diego, State of California.  Janette is Debtor's mother.

8.     Car Wash Management, LLC ("CWM") is and at all relevant times was a Hawaiian limited liability company holding California entity no. 201916210030 with its principal place of business in the County of San Diego, State of California. Based upon information and belief, Debtor and Janette are principals, members and/or managers of CWM.

9.     The Plaintiffs are informed and believe that CWM, on the one hand, and Debtor, on the other hand, are the alter egos of each other, and on that basis allege, there exists a unity of interest and ownership between them such that any individuality and separateness between them does not exist.  The Plaintiffs are further informed and believe, and on that basis allege, Debtor commingled and/or used assets of CWM for his personal use, caused assets to be transferred to them and others

without adequate consideration, and withdrew funds from CWM's bank accounts for their personal use.   Moreover, Debtor has completely controlled, dominated, managed, and operated CWM to be merely a conduit for his personal benefit, such that any individuality or separateness of CWM and Debtor does not exist.

10.   Adherence to the fiction of the separate existence of Debtor and CWM as entities distinct from and among themselves would permit an abuse of the corporate privilege and would promote injustice in that the Plaintiffs are informed and believe, and on that basis allege, that CWM has become a mere shell and sham without capital or assets, and/or has been so inadequately capitalized that, compared with the business to be done and the risks of loss, its capitalization is illusory.

11.   Further adherence to the fiction of the separate existence of CWM as an entity distinct from Debtor permits abuse of the corporate privilege and would sanction a fraud in that Debtor has withdrawn and distributed to themselves or others, large sums of CWM's assets without any consideration, all for the purpose of avoiding and preventing tracing of assets, findings of liability, attachment and execution by creditors, thereby rendering CWM immune from liability, insolvent and/or unable to meet its obligations.

## II.

## <u>JURISDICTION AND VENUE</u>

12.   This Court has jurisdiction over the matters set forth in this Complaint pursuant to 28 U.S.C. §§ 157(a) and 1334(a) because they arise out of and are related to the above captioned Chapter 7 case before this Court.

13.   This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (I), and this Court may, consistent with Article III of the Constitution, enter final orders or judgments and conduct a trial absent consent of the parties.

14.   Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a) and (c) because Defendants' Chapter 7 case is

pending in this judicial district.

## III.

## GENERAL ALLEGATIONS

15.    In October 2023, Debtor approached Erik and Nick with a business opportunity to own a car wash. In concept, a new entity would be formed (West Covina Car Wash ("WCCW")) which in turn would hire CWM to oversee construction of the car wash. Debtor provided Erik and Nick with a "proforma" and a "prospectus" promoting the opportunities that could be realized by investing with him in this plan. True and correct copies of these items are attached hereto as **Exhibit A.**

16.    During subsequent discussions in October 2023 among Debtor, Erik, Nick and ultimately Sandra, the parties agreed to form a limited liability company in which CWM would be the primary owner (70%) while Erik, Nick and Sandra would each hold a ten percent (10%) interest.

17.    Erik, Nick, and Sandra would be responsible for signage, painting, and marketing while CWM would build out the car wash.  CWM would contribute $200,000 to the entity while Erik, Nick and Sandra would each contribute $66,666. Debtor assured the Plaintiffs the car wash would open before January 1, 2024.  At the same time, Debtor was anxious and insistent in receiving the Plaintiffs' investment, claiming he had arranged a special lease agreement with the owner of the property where the car wash would be located.

18.    On October 26-27, 2023, Nick, Erik, Sandra, and Debtor (on behalf of CWM) signed an operating agreement for "West Covina Car Wash, a Delaware Limited Liability Company. DBA Dam Car Wash." A true and correct copy of the operating agreement is attached hereto as **Exhibit B.** At the time, CWM was not in good standing with the California Franchise Tax Board or the California Secretary of State, and therefor was legally unable to conduct business in the State of California.

/ / /

19. Thereafter, Debtor directed the Plaintiffs to deposit their contributions into a bank account which Debtor represented he had set up for WCCW. At that time, Debtor represented to the Plaintiffs there would be approximately $100,000 for operating capital in the account after considering construction and related costs for the car wash.

20. However, the Plaintiffs later learned the bank account was held in the name of CWM and wholly controlled by Debtor and the other State Court Defendants.

21. By December 2023, Debtor was not providing any company financial information to the Plaintiffs despite repeated requests for same. The Plaintiffs were frustrated as they did not have any transparency or access to the bank account where they had deposited their monies totaling $200,000.00. This led to a meeting between the Plaintiffs and Debtor that month where he brought a notepad with handwritten estimates of equipment and related costs for the car wash. During this meeting, Debtor told the Plaintiffs they were approximately $70,000.00 over budget (after just one month!) and that the Plaintiffs would have to make up the deficit through their expected profits. Until this meeting, Debtor repeatedly told the Plaintiffs the project was on schedule and on budget.

22. The Plaintiffs later discovered Debtor had been commingling the Plaintiffs' $200,000.00 investment with CWM's funds. The Plaintiffs demanded Debtor provide an accounting to demonstrate how he was keeping the Plaintiffs' investments separate and apart from any of Debtor's or CWM's other affairs. Over three months later, Debtor provided a report to the Plaintiffs prepared by Debtor and the other State Court Defendants. Not surprisingly, the report was deficient in several ways and did not provide the transparency and accounting the Plaintiffs were demanding.

/ / /

/ / /

23. The Plaintiffs next demanded Debtor open a new account dedicated to WCCW. Although Debtor opened the account, Debtor never transferred any of the Plaintiffs' monies into the account

24. By April-May 2024, the car wash was nowhere near close to opening. The Plaintiffs quickly learned vendors and contractors (painters, landscapers, designer) had never been paid, building permits had not been obtained and insurance had not been procured, leaving to question where the Plaintiffs' money went. The Plaintiffs were later told by associates of Debtor's that CWM had no money. At this point, Debtor's house of cards began to fall.

25. In a desperate attempt to salvage the situation, Debtor attempted to open the car wash in May 2024 only to be immediately shut down for not having the proper permits. To date, the car wash remains non-operable, and the Debtor has refused to return the Plaintiffs' monies.

26. On July 29, 2024, Plaintiffs filed a complaint against the State Court Defendants in the San Diego County Superior Court as Case No.: 24CU003299C alleging causes of action for: (i) fraud, deceit, and intentional misrepresentation; (ii) negligent misrepresentation; (iii) rescission of contract; (iv) misapplication of money; and (v) conversion (the "State Court Action").

27. On October 4, 2024, Debtor filed the above referenced chapter 7 bankruptcy case. As a result of the Chapter 7 bankruptcy case, the State Court Action is automatically stayed as to Debtor pursuant to 11 U.S.C. §362(a).

28. On December 19, 2024, Debtor filed a First Amended Complaint in the State Court Action for the limited purpose of adding and/or supplementing allegations and/or causes of action against Debtor's mother, Janette. The State Court Action remains pending against the other State Court Defendants.

/ / /

/ / /

/ / /

**IV.**

**<u>FIRST CLAIM FOR RELIEF</u>**

**Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)**

29.    Plaintiffs incorporate all allegations contained in paragraphs 1 through 28 of this Complaint as though fully set forth herein.

30.    A debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition is not dischargeable.  11 U.S.C. § 523(a)(2)(A).

31.    The Debtor's misrepresentations alleged above were made intentionally, with full knowledge that they were false.

32.    As set forth above, Debtor made false representations to the Plaintiffs regarding Debtor's intentions and promises relative to the car wash enterprise. Debtor made these misrepresentations to the Plaintiffs during preparation of the operating agreement for WCCW and continued making false and fraudulent representations regarding the status and progress of the car wash and monies contributed by the Plaintiffs.

33.    Debtor knew throughout discussions with, and documentation provided to, the Plaintiffs that Debtor did not have the intent to follow through with the promised commitments and representations and that Debtor intended to deceive Plaintiffs.

34.    Debtor knew that the misrepresentations made to the Plaintiffs detailed above were false when Debtor made them, or that Debtor made the representations recklessly and without regard for their truth.

35.    Since the beginning of their relationship, Debtor intended the Plaintiffs to rely upon their misrepresentations regarding their experience, qualifications, and promise to return the Plaintiffs' invested monies plus returns on those investments to induce the Plaintiffs to enter the operating agreement and to pay the monies.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12756260.1                                                7

COMPLAINT TO DETERMINE DISCHARGEABILITY

36.    The Plaintiffs reasonably relied upon Debtor's misrepresentations. The Plaintiffs would not have entered into the operating agreement or invested their money had they known the truth. The Plaintiffs did not suspect, or have reason to suspect, Debtor's misrepresentations might be untrue until, at the earliest, May 2024.

37.    As a direct and proximate result of the foregoing conduct of Debtor, the Plaintiffs have sustained damages of least of $200,000.00, the exact amount of which will be subject to proof at time of trial.

38.    It was foreseeable that the fraud committed by Debtor would impact the Plaintiffs negatively and cause damage.

39.    The Plaintiffs' reliance on the above misrepresentations was justifiable and a substantial factor in causing the Plaintiffs' harm.

40.    The aforementioned wrongful conduct of Debtor violates 11 U.S.C. § 523(a)(2)(A), and, as such, the amount of damages suffered by Plaintiffs as a result of Debtor's wrongful conduct is not dischargeable in this and any other future bankruptcy filed by Debtor.

### V.

### SECOND CLAIM FOR RELIEF

### Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)

41.    Plaintiffs incorporate all allegations contained in paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42.    A debt for willful and malicious injury by the debtor to another person or to property of another is not entitled to discharge.  11 U.S.C. § 523(a)(6).

43.    To satisfy this standard, the debtor's conduct must have been "tortious," and the injury must have been "willful," and "malicious."

44.    As detailed above, in October 2023 the Plaintiffs provided Debtor with $200,000.00 to be used toward WCCW and the enterprise related thereto.

/ / /

/ / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12756260.1                                     8

COMPLAINT TO DETERMINE DISCHARGEABILITY

45.    However, while the Plaintiffs' monies were in the custody and control of the Debtor, Debtor used and misapplied the Plaintiffs' monies for his own use and to the exclusion of the Plaintiffs and the enterprise.

46.    Despite demands for transparency, an accounting and a return of the Plaintiffs' monies, Debtor has refused and continues to refuse to return the monies to the Plaintiffs.

47.    As a direct and proximate result of the Debtor's misapplication of the Plaintiffs' money and breach of his duties as trustee for the Plaintiffs' money, the Plaintiffs has been deprived of the sum of $200,000.00. Further, Debtor failed to use the Plaintiffs' monies for the car wash enterprise causing the Plaintiffs to suffer the loss of anticipated and promised profits and exposing the Plaintiffs to liabilities related to the enterprise.

48.    Debtor's taking of Plaintiff's $200,000.00 was an illegal and "tortious" conversion under California state law in that:

a.    At all times relevant, Plaintiffs had an ownership or right of possession of the $200,000.00;

b.    Debtor converted Plaintiffs' $200,000.00 because Debtor's unauthorized use of the $200,000.00 was a wrongful act or disposition of Plaintiffs' property rights; and

c.    Plaintiffs have been damaged in the amount of at least $200,000.00.

49.    As alleged above, Debtor's actions were done in "willful" and "malicious manner," solely intending to harm Plaintiffs and take as much of Plaintiffs' money as possible.

50.    Debtor's wrongful actions in illegally converting Plaintiffs' $200,000.00 under California law were "willful" because Debtor had a subjective motive to inflict injury on Plaintiffs, and/or knew that injury to Plaintiffs was substantially certain to occur from his conduct.

51. Debtor's wrongful actions in illegally converting Plaintiffs' $200,000.00 under California law, were "malicious" in that the illegal conversion of Plaintiffs' $200,000.00 by Debtor was:

    a. A wrongful act;

    b. Done intentionally;

    c. Which necessarily caused injury to Plaintiffs; and

    d. Was done without just cause or excuse.

52. The aforementioned wrongful conduct of Debtor violates 11 U.S.C. § 523(a)(6), and, as such, the amount of damages suffered by Plaintiffs as a result of Debtor's wrongful conduct is not dischargeable in this and any other future bankruptcy filed by Debtor.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court enter judgment against Debtor as follows:

1. That the full amount of damages totaling at least $200,000.00 owed by Debtor to Plaintiffs is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

2. That the full amount of damages totaling at least $200,000.00 owed by Debtor to Plaintiffs is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

3. For costs of this Adversary Proceeding; and

4. For such other and further relief as this Court deems appropriate.

Dated: January 6, 2025          **HIGGS FLETCHER & MACK LLP**

By:/s/ *Martin A. Eliopulos*
MARTIN A. ELIOPULOS, ESQ.
JAKE D. SESTI, ESQ.
Attorneys for Plaintiffs
ERIK ANDERSON, NICK
ASHTON and SANDRA ASHTON

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12756260.1

10

COMPLAINT TO DETERMINE DISCHARGEABILITY

# EXHIBIT A

## Car Wash Proforma West Covina

Cars washed at pricing of $9.00, $13.00, $15.00, $20.00 wash packages
Average revenue per wash of:    **$14.00**    **Hypothetical Average Revenue Per Wash:**    **$14.00**
All wash packages are 4 pass washes, each pass is one car length.
Each Car Wash is capable of washing 1200+ cars per day
Proforma done for Southwest USA weather patterns

**Actual wash volume is dependent on competition, speed & type of traffic, visibility, weather and other factors**

| | Example 1 | Example 2 | Example 3 | | |
|---|---|---|---|---|---|
| **Cars Washed-Yearly Avg.** | **109,500** | **146,000** | **182,500** | | |
| Cars Per Day | 300 | 400 | 500 | | |
| | | | | | |
| Automatic Wash Revenue | $1,533,000.00 | $2,044,000.00 | $2,555,000.00 | | |
| | $0.00 | $0.00 | $0.00 | | |
| | | | | | |
| **Total Revenue Yearly** | $1,533,000.00 | $2,044,000.00 | $2,555,000.00 | | |
| | | | | | |
| **Operating Expenses** | | | | Operating expenses, cost per car | |
| Variable Expenses | | | | **Examples 1,2,3** | |
| Supplies: Soap, Wax, Salt | $54,750.00 | $73,000.00 | $91,250.00 | $0.50 | |
| *Utilities: Gas | $1,095.00 | $1,460.00 | $1,825.00 | $0.01 | |
| *Utilities: Water | $84,315.00 | $112,420.00 | $140,525.00 | $0.77 | |
| *Utilities: Electric | $93,075.00 | $124,100.00 | $155,125.00 | $0.85 | |
| Credit Card Fees | $28,470.00 | $37,960.00 | $47,450.00 | $0.26 | |
| | | | | | |
| Fixed Expenses | | | | Operating expenses, fixed per year | |
| Customer Claims | $3,000.00 | $3,000.00 | $1,000.00 | $3,000.00 | |
| Utilities:Phone & Internet: | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | |
| Insurance | $28,000.00 | $28,000.00 | $28,000.00 | $28,000.00 | |
| Mowing/Landscaping/Plow | $6,000.00 | $6,000.00 | $2,000.00 | $6,000.00 | |
| Labor ** | $200,000.00 | $200,000.00 | $200,000.00 | $200,000.00 | |
| Management | $0.00 | $0.00 | $0.00 | $0.00 | |
| Misc. | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 | |
| | | | | | |
| **Total Operating Expenses** | $506,105.00 | $593,340.00 | $674,575.00 | | |
| Property Tax & Mortgage | $348,000.00 | $348,000.00 | $348,000.00 | | |
| **Gross Operating Profit (EBITDA)** | $678,895.00 | $1,102,660.00 | $1,532,425.00 | | |

To compare a hypothetical site Input the following in the yellow highlighted cells:

**Hypothetical Average revenue per wash**
**Hypothetical Cars Washed - Yearly Avg.**
Hypothetical Expenses, Cost Per Car
Hypothetical Expenses, Fixed, Yearly
Estimate Labor As Desired

**EBITDA: Earnings Before Interest, Taxes, Depreciation and Amortization.**
The EBITDA metric is a variation of operating income (EBIT) because it excludes non-operating expenses and certain non-cash expenses. The purpose of these deductions is to remove the factors that business owners have discretion over, such as debt financing, capital struction, methods of depreciation, and taxes (to some extent). It can be used to showcase a firm's financial performance without accounting for its capital structure.


*Utility rates vary




Site Notes:
Reclaim Used

Triple foamer & stand alone dryers installed.

Electric, Total Cost Per KWH: $0.1346
Gas, Distribution Cost Per MCF: $0.8615
Gas, Usage Cost Per MCF: $3.8200
Water, Cost Per Cubic Feet: $0.0690; Cost Per CCF: $6.900
Sewer Cost Per Cubic Feet: $0.0406; Cost Per CCF: $4.06

Avg. Water Usuage Per Car: 7.483 Cubic Feet (56 Gallons)
          Includes: Washing bay once per week, softeners & R.O. reject



This is meant to be a guide and needs to be tailored to actual items mentioned above such as labor, utilities, pricing, and usage rates. Some washes experience much higher usage than the # of cars per day shown here.

## West Covina Prospectus

| Item | Cost |
|---|---|
| Painting | $22,000.00 |
| Training | $12,000.00 |
| T-Shirts / uniform | $4,000.00 |
| Landscaping | $4,000.00 |
| Labor, Vacuum | $1,500.00 |
| Labor bay, equip, pump | $3,000.00 |
| Misc\. Parts, fittings | $2,000.00 |
| Total: | $48,500.00 |

# EXHIBIT B

**OPERATING AGREEMENT**

For West Covina Car Wash, a Delaware Limited Liability Company. DBA, Dam Car Wash.

## 1. Formation

The members hereby form a Limited Liability Company ("Company") pursuant to the laws of the State of Delaware and agree to the terms and conditions set forth in this Operating Agreement.

## 2. Name

The name of the Company is West Covina Car wash, doing business as Dam Car Wash.

## 2.5. Registered Agent

Registered Agent Inc. 8 The Green, Ste A, Dover, DE 19901

## 3. Purpose

The purpose of the Company is to generate revenue for its members via the sales of car wash services.

## 4. Principal Place of Business

The principal place of business shall be 310 S Vincent Ave, West Covina, CA 91790.

## 5. Members and Contributions

The Members of the Company are:

- [Nick Ashton]: Contribution [$66,666], Ownership [10%]
- [Erik Anderson]: Contribution [$66,666], Ownership [10%]
- [Sandra Ashton]: Contribution [$66,666], Ownership [10%]
- [Car Wash Management LLC]: Contribution [$200,000], Ownership [70%]

## 6. Non-Diluting Membership Interests

Notwithstanding any provisions in this Agreement to the contrary, the membership interests of the Members, as described in Section 5, shall not be subject to dilution or reduction unless unanimously agreed upon in writing by all Members.

## 7. Management

The Company will be managed by its Members. Decisions shall be made by a majority vote unless otherwise stated in this Agreement.

## 8. Distribution of Profits and Losses

Profits and losses shall be distributed to the Members in proportion to their ownership percentages, as described in Section 5.

## 9. Membership Transfers

No Member may transfer or assign their interest in the Company without the unanimous written consent of the other Members.

## 10. Dissolution

The Company may be dissolved upon the unanimous agreement of the Members.

## 11. Amendments

This Agreement may be amended or modified only with the unanimous written consent of all Members.

## 12. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

## 13. Dispute Resolution

Any disputes arising from this Agreement shall be resolved through mediation or, if unsuccessful, through binding arbitration in Delaware.

## 14. Entire Agreement

This Agreement constitutes the entire agreement between the parties and supersedes all prior discussions, negotiations, and agreements, whether oral or written.

*IN WITNESS WHEREOF*, the undersigned have executed this Operating Agreement as of [Date].

DocuSigned by:

Nick Ashton
E8012935F83543F...

Nick Ashton                    10/26/2023

DocuSigned by:

292B32182CC3437...

Erik Anderson                  10/27/2023

DocuSigned by:

Sandra Ashton
2B08C4FC798F464...

Sandra Ashton                  10/26/2023

DocuSigned by:

8CE97C7DC45E4E3...

Car Wash Management            10/26/2023