**CSD 1000** [12/01/03]
Name, Address, Telephone No. & I.D. No.

Andrew Paul Williams
12641 Antioch Rd. Suite #1045
Overland Park KS 66213
(619) 796-6469

FILED

2026 MAY 12 PM 2:46

CLERK
U.S. BANKRUPTCY CT.
SO DIST. OF CALIF.

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
Williams

BANKRUPTCY NO. 24-03761-017
25-90005-CC7
[add if filing in response to hearing]
Date of Hearing: June 8 20.26
Time of Hearing: 10:30 am
Name of Judge: Hon. Christopher B. Latham

Tax I.D.(EIN)#: _____  /S.S.#:XXX-XX-6131    Debtor.

notice of motion and motion to vacate

CSD 1000

el PAD acoosntcmtn 28P

Andrew Paul Williams
Defendant, Pro Se
Mailing Address: 12641 Antioch Rd., Suite #1045
Overland Park, KS 66213
Telephone: (619) 796-6469
Email: andrew@carwashmgmt.com

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

*In re*

**ANDREW PAUL WILLIAMS,**

    Debtor.

_____

**ERIK ANDERSON, NICK ASHTON, and
SANDRA ASHTON,**

    Plaintiffs,

v.

**ANDREW PAUL WILLIAMS,**

    Defendant.

Bankruptcy Case No. 24-03761-CL7
Chapter 7

Adv. Proc. No. 25-90005-CL

**DEFENDANT'S MOTION TO VACATE
DEFAULT AND DEFAULT JUDGMENT
PURSUANT TO FED. R. CIV. P. 60(b)
(Made Applicable by Fed. R. Bankr. P.
9024)**

Hearing Date: June 8, 2026
Hearing Time: 10:30 a.m.
Judge: Hon. Christopher B. Latham
Dept.: 1, Room 218

## NOTICE OF MOTION AND MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT;

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on the date and time set by the Court, in the Courtroom of the Honorable Christopher B. Latham, Department 1, Room 218, United States Bankruptcy Court for the Southern District of California, located at 325 West F Street, San Diego, California 92101, defendant ANDREW PAUL WILLIAMS

("Defendant"), appearing pro se, will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 60(b), made applicable by Federal Rule of Bankruptcy Procedure 9024, vacating (1) the Clerk's Entry of Default (ECF No. 7), (2) the Order on Plaintiffs' Motion for Default Judgment (ECF No. 13), (3) the Default Judgment (ECF No. 15), and (4) the Amended Default Judgment (ECF No. 17), and granting Defendant leave to file a responsive pleading.

This Motion is made on the grounds that the default and default judgment were entered as a result of (a) excusable neglect under Rule 60(b)(1), including a treating physician's contemporaneous, signed four-week work-restriction note dated February 10, 2025 (covering the period during which default was entered) and two Emergency Department visits during the response period requiring intravenous high-dose corticosteroids and a Schedule II opioid analgesic; (b) misrepresentation by an opposing party under Rule 60(b)(3); and (c) defective service under Rule 60(b)(4).

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Andrew Paul Williams and exhibits thereto filed concurrently; the Request for Judicial Notice filed concurrently; the entire record in this Adversary Proceeding and in the underlying Bankruptcy Case No. 24-03761-CL7; and any oral argument that may be presented at the hearing.

Defendant further requests that this Court **stay all collection activity**, including but not limited to the Writ of Execution issued March 30, 2026 (ECF No. 28) and the judgment

debtor examination set for May 4, 2026 at 10:00 a.m. (ECF No. 24), pending resolution of this Motion.

Pursuant to Local Bankruptcy Rule 9013-2, any opposition to this Motion must be filed and served not later than fourteen (14) days before the hearing date set by the Court.

Dated: __5/12__, 2026

_____

Andrew Paul Williams

Defendant, Pro Se

## <u>MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT</u>

Defendant Andrew Paul Williams, appearing pro se, respectfully moves this Court for an order vacating the Clerk's Entry of Default (ECF No. 7), the Order on Plaintiffs' Motion for Default Judgment (ECF No. 13), the Default Judgment (ECF No. 15), and the Amended Default Judgment (ECF No. 17), and granting Defendant leave to file an answer to the Complaint, on the following grounds:

1.    Pursuant to **Federal Rule of Civil Procedure 60(b)(1)** (made applicable by Fed. R. Bankr. P. 9024), the default and default judgment should be vacated for excusable neglect. During the response period and continuing through entry of default: **(a) Defendant's treating rheumatologist of long standing, in a contemporaneous progress note dated February 10, 2025, prescribed a four-week work-restriction directive expressly finding that Defendant had "difficulty with daily activities and work due to symptoms"**; (b) Defendant required two Emergency Department visits within four days, the second concluding with intravenous Solu-Medrol 250 mg and Schedule II opioid analgesia; (c) Defendant was on high-dose prednisone (80 mg daily) and initiated tocilizumab biologic injections during this period; (d) objective laboratory values demonstrated severe systemic inflammation (CRP up to 124, leukocytosis to WBC 18.4); and (e) Defendant's bankruptcy counsel abandoned the adversary by single email and no follow-up. Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380

(1993), and *TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001), each of the four Pioneer factors weighs decisively in Defendant's favor.

2.  Pursuant to **Federal Rule of Civil Procedure 60(b)(3)**, the default and default judgment should be vacated as the product of misrepresentation by an opposing party. Paragraph 25 of the Complaint alleges that "the car wash remains non-operable." That allegation is materially false. The car wash was built, did open, did operate, and today continues to operate at the very same location, 310 South Vincent Avenue, West Covina, California, under the trade name "Sun Day Carwash," using the very same equipment that Defendant's company installed.

3.  Pursuant to **Federal Rule of Civil Procedure 60(b)(4)**, in the alternative, the default and default judgment are voidable by reason of defective service. The Summons and Complaint were mailed to "12136 Avenida Sivrita, San Diego, CA **92121**", an incorrect ZIP code. The correct ZIP code for that address is 92128 (Rancho Bernardo). ZIP code 92121 corresponds to a different community (Sorrento Valley/Mira Mesa) approximately eight miles distant.

4.  Defendant has multiple, substantial, **meritorious defenses** on the merits, including but not limited to: (a) Plaintiffs' own bank records (ECF Nos. 12-3, 12-4) demonstrate that Car Wash Management LLC contributed approximately $350,000 to the West Covina project, 1.75 times the Plaintiffs' combined $195,000 contribution, conduct fundamentally inconsistent with fraudulent intent; (b)

Plaintiffs are sophisticated investors who reviewed and signed the Operating Agreement defining their equity interests, with Plaintiff Anderson having undertaken responsibility for drafting a more elaborate operating agreement (working with his own counsel) that was never executed; (c) the operating agreement's Section 13 mandates mediation followed by binding arbitration in Delaware, which Plaintiffs bypassed; (d) the parties agreed at a December 2024 meeting that approximately $95,000 of CWM's continuing advances to WCCW would be characterized as a loan from CWM to WCCW (which has never been repaid), further conduct inconsistent with fraudulent intent under §523(a)(2)(A); and (e) Defendant intends, upon vacatur, to file counterclaims against Plaintiffs for breach of the Operating Agreement, breach of Plaintiffs' fiduciary duties under Delaware law, and breach of Plaintiffs' performance obligations under the venture, and to move to compel mediation and binding arbitration in Delaware pursuant to Operating Agreement § 13 and the Federal Arbitration Act, 9 U.S.C. § 4.

5.      The Motion is timely and within the one-year outer limit of Rule 60(c)(1).

6.      Defendant further requests that the Court **stay all post-judgment collection**, including the Writ of Execution issued March 30, 2026 (ECF No. 28), the Abstract of Judgment, and the Judgment Debtor Examination set for May 4, 2026 (ECF No. 24), pending hearing and resolution of this Motion.

**WHEREFORE**, Defendant respectfully requests that this Court enter an order: (i) vacating the Clerk's Entry of Default (ECF No. 7), the Order on Motion for Default Judgment (ECF No. 13), the Default Judgment (ECF No. 15), and the Amended Default Judgment (ECF No. 17); (ii) granting Defendant leave to file an Answer within 21 days; (iii) staying all collection activity pending entry of an Order; and (iv) granting such further and other relief as the Court deems just and proper.

Dated: ___5/12___, 2026

_____

Andrew Paul Williams, Defendant, Pro Se

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This Court should vacate the default and default judgment entered against defendant Andrew Paul Williams. The single most important fact for this Court's Rule 60(b)(1) analysis is this: **Defendant's treating rheumatologist, Dr. Firoozeh Motamedi, in a signed and dated progress note of February 10, 2025, expressly found that Defendant had "difficulty with daily activities and work due to symptoms" and prescribed a four-week work-restriction directive**. That four-week period, from February 10, 2025 forward, covered *every relevant date* in this proceeding: the date Defendant's answer was due (February 5-6, 2025), the date the Clerk entered default (February 18, 2025), and the period thereafter while Defendant remained in active rheumatology management of an Adult-Onset Still's Disease flare. The work-restriction directive is independent of Defendant's self-report; it is the contemporaneous medical determination of Defendant's long-time treating physician, supported by objective laboratory findings of severe systemic inflammation (CRP > 100, ESR > 38, WBC > 18). It is, on its face, dispositive of the "reason for delay" factor under *Pioneer*.

That alone would suffice. The full record is more compelling still: **two Emergency Department visits** within four days during the response period (January 30 and February 2, 2025); intravenous Solu-Medrol 250 mg administered February 2, 2025; discharge that same day on a Schedule II opioid (Percocet); initiation of tocilizumab biologic immunosuppressant therapy on February 3, 2025; high-dose prednisone (80 mg daily)

throughout the response period; chronic severe major depressive disorder and chronic post-traumatic stress disorder under Kaiser psychiatric care extending back to at least 2021; effective homelessness; a father recovering from a December 2024 heart attack; and abandonment of the adversary by Defendant's bankruptcy counsel through a single email and no follow-up. On top of all of that: a six-month period of plaintiff inactivity that nearly drew sua sponte dismissal from this Court (ECF No. 9); entry of judgment with no hearing; and a complaint built around an averment that any neutral observer can see is false on the face of public records ("the car wash remains non-operable"), when in fact the very same car wash has been operating with the very same equipment under a successor operator's name for over a year.

The Ninth Circuit's policy could not be clearer: "Judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695-96 (9th Cir. 2001), ("where there has been no merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute").

Each of three independent grounds, Rule 60(b)(1), (b)(3), and (b)(4), supports vacatur. Defendant has presented multiple meritorious defenses, supported in significant part by Plaintiffs' own documentary evidence already filed with this Court (ECF Nos. 12-

3, 12-4). Plaintiffs cannot show prejudice; their own six-month inactivity disposes of any prejudice argument as a matter of law and equity.

## II.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409. The Court has jurisdiction over the present Motion under Federal Rule of Bankruptcy Procedure 9024 (incorporating Fed. R. Civ. P. 60).

## III.  STATEMENT OF FACTS

### A. The Underlying Investment and the Failed Car Wash Project.

In or about October 2023, Defendant's Delaware limited liability company, Car Wash Management LLC ("CWM"), entered into a joint venture with Plaintiffs to develop a car wash at 310 South Vincent Avenue, West Covina, California. The vehicle for the project was West Covina Car Wash, LLC ("WCCW"). Under the Operating Agreement signed by all four members in October 2023, CWM contributed $200,000 in initial capital for a 70% interest, and the three Plaintiffs collectively contributed $199,998 for combined 30% interests ($66,666 each). (See ECF No. 1, Ex. B; Williams Decl. ¶¶ 4-7.)

Plaintiffs' own bank records, filed by Plaintiffs themselves with their Motion for Default Judgment (ECF Nos. 12-3 and 12-4, together, approximately 856 pages), establish that CWM in fact contributed approximately **$350,000** to the project, that is, **$150,000 above** its $200,000 capital commitment, and approximately 175% of the Plaintiffs' combined contribution. (Williams Decl. ¶ 9; Request for Judicial Notice ("RJN") Exs. 1,

2.) Following the emergence of cost overruns, the parties met in December 2024 at Nick Ashton's apartment in the University Towne Centre area of La Jolla. To preserve the 70/30 equity allocation, which Section 6 of the Operating Agreement protected against dilution absent unanimous written consent, the parties agreed that approximately $95,000 of CWM's continuing advances to WCCW would be characterized as a loan from CWM repayable to CWM (rather than as additional equity contributions). CWM has never been repaid. (Williams Decl. ¶ 11.)

**B. The Car Wash Did Open and Did Operate.**

Notwithstanding the bald and material misrepresentation in paragraph 25 of the Complaint that "the car wash remains non-operable," the car wash actually opened in late spring of 2024 and operated for approximately one to two months with permits, insurance, employees, POS receipts, credit-card processing, and revenue. (Williams Decl. ¶¶ 12-13.) The equipment installed by CWM at 310 South Vincent Avenue is, *as of the filing of this Motion,* currently being used to operate a fully-functioning car wash at that very address, operated by a successor operator under the name "Sun Day Carwash." Sun Day Carwash maintains a Google business listing showing approximately 70 reviews at 4.8 stars; a Yelp listing; and the City of West Covina's own Instagram account publicly featured the business in a December 15, 2025 post. (Williams Decl. ¶ 14; RJN Exs. 3-5.)

**C. Defendant's Bankruptcy and the Adversary Proceeding.**

On October 4, 2024, Defendant filed a Chapter 7 petition, represented by attorney Ronald E. Stadtmueller. Discharge was entered on January 7, 2025. (Williams Decl. ¶¶ 16-

18.) On January 6, 2025, the last day of the §523(c) objection-to-dischargeability period, and one day before discharge, Plaintiffs filed the Adversary Complaint. The Summons issued the same day. The certificate of service shows service by mail on Williams at "12136 Avenida Sivrita, San Diego, CA **92121**", the wrong ZIP code. The correct ZIP for the Avenida Sivrita address is 92128. The same erroneous ZIP code recurs in ECF Nos. 4, 5, and 6-1, and was never corrected. (Williams Decl. ¶ 19.)

### D. Stadtmueller's Abandonment by Single Email.

Stadtmueller's representation of Williams in the bankruptcy case did not extend to adversary proceedings. Stadtmueller acknowledged this by sending a single email to Williams that read in full:

"Mr. Williams, See the attached Adversary Complaint filed in your case alleging non dischargeability of a debt. As you know my representation does not include defense of any Adversary Proceedings. If you wish to discuss the case and receive a referral to someone who may be willing to represent you in this matter please contact me Wednesday. You must file a timely Answer to the Complaint or the plaintiff will be able to obtain a default judgment. Ron."

(Williams Decl. ¶¶ 20-21, Ex. A.) Stadtmueller never followed up. He did not call. He did not refer the matter to specific counsel. He did not file a notice of limited scope. He took no further action of any kind.

### E. Defendant's Active Medical Crisis During the Response Period.

The acute response-period circumstances are documented by **contemporaneous Kaiser Permanente medical records lodged with this Motion under seal as Exhibit E to the Williams Declaration**. Each of the encounters and findings below is supported by signed, dated Kaiser progress notes and objective laboratory data. The complete clinical timeline:

**December 30, 2024 (six days before complaint filed), Office Visit, Dr. Motamedi (Rheumatology).** Defendant presents with daily body aches, fatigue "like having the flu," and feeling "hit by a bus." Plan includes ordering inflammatory labs and considering switch to canakinumab or tocilizumab. (Williams Decl. ¶ 24.)

**January 30, 2025, First Emergency Department visit.** Whole-body urticarial rash, severe joint pain ("like being hit by a bus"), fatigue, weakness, difficulty breathing on movement. Diagnosis: AOSD flare. **Objective labs: CRP 124.1 mg/L (reference ≤7.4); WBC 12.6; tachycardia 100-109**. Discharged on prednisone 60 mg daily x 7 days. (Williams Decl. ¶ 25.)

**February 2, 2025 (three days before answer due), Second Emergency Department visit.** Throat swelling, sensation of throat closing, brief difficulty breathing. **Treatment: intravenous Solu-Medrol (methylprednisolone 250 mg)**; intravenous Toradol; **oxycodone-acetaminophen (Percocet)** administered and prescribed for discharge. Objective labs: CRP 109.6; ESR 38. (Williams Decl. ¶ 26.)

**February 3, 2025, Video Visit, Dr. Liu (Rheumatology).** Day after second ED visit. Prednisone increased to **80 mg daily**; **tocilizumab (Actemra) biologic injections initiated**; Percocet continued PRN. (Williams Decl. ¶ 27.)

**February 5-6, 2025, Defendant's answer to the Adversary Complaint was due.**

**February 10, 2025 (five days after answer due), Office Visit, Dr. Motamedi (Rheumatology).** Severe joint pain moving joint to joint; muscle cramping; night sweats and chills; rash; difficulty swallowing; weight loss of 10-12 pounds. **Objective labs: WBC 18.4 (leukocytosis); CRP 40.49; ESR 52; ALT 116**, all elevated. **TREATING PHYSICIAN'S WORK-RESTRICTION NOTE**: the progress note's Plan section expressly states: **"Work Limitations. Patient reports difficulty with daily activities and work due to symptoms. Provide work restriction note for 4 weeks."** (Williams Decl. ¶¶ 28-29.)

**February 12, 2025, Telephone Visit, Dr. Motamedi.** Defendant on prednisone 80 mg daily; "diffuse myalgias and arthralgias, **hard to get out of the bed and hard to walk**"; Percocet 1-2 daily for joint pain; continued elevated ALT (116) and leukocytosis (WBC 18,000). (Williams Decl. ¶ 30.)

**February 18, 2025, Clerk's Entry of Default issued (ECF No. 7).**

**February 25, 2025, Telephone Visit, Dr. Motamedi** (continued AOSD management). **March 3, 2025, Hospital Outpatient Visit** (continued AOSD management). (Williams Decl. ¶ 32.)

Defendant's active medication regimen during the response period and through entry of default included: **high-dose prednisone (80 mg/day); tocilizumab (Actemra) biologic immunosuppressant; and oxycodone-acetaminophen (Percocet, Schedule II opioid) at ~1-2 tablets per day**. This combination of agents independently produces fatigue, cognitive impairment, and limitation of functional capacity. (Williams Decl. ¶ 33.)

**F. Chronic Psychiatric and Personal Baseline.**

Independent of the AOSD flare, Defendant has long-documented chronic severe major depressive disorder, chronic post-traumatic stress disorder, and an anxiety disorder. Behavioral Health Indicator scores in the severe range (80-89) and PHQ-9 scores in the severe major depression range (17-22) appear in the chart in November 2021 and 2022, well before the events giving rise to this Adversary Proceeding. Defendant's present Kaiser psychiatric diagnoses (per Dr. R. Bhat, M.D.) are: F33.2 Major Depressive Disorder, Recurrent Episode, Severe; F43.12 Chronic Posttraumatic Stress Disorder; F41.8 Anxiety Disorder, Other Specified. The treating psychiatrist also contemporaneously documented avoidance behaviors during the response period that materially affected Defendant's functional capacity to recognize and respond to legal process. The specific clinical observations supporting this finding are set forth in the sealed Exhibit E and are not summarized on the public record. (Williams Decl. ¶ 34; Sealed Ex. E [4/8/2026 Bhat psychiatric evaluation].)

**G. Plaintiffs' Six-Month Inactivity and the Court's Notice of Intent to Dismiss.**

Plaintiffs filed their Request for Entry of Default on February 14, 2025 (ECF No. 6). The Clerk entered default on February 18, 2025 (ECF No. 7). Plaintiffs then did absolutely nothing for *six months*. On August 14, 2025, this Court, having observed that "More than three months have elapsed since the last action was taken" and that "Plaintiff has failed to submit a default judgment", issued a Notice of Intent to Dismiss for Want of Prosecution under Local Bankruptcy Rule 7041-1 (ECF No. 9). Only after that notice did Plaintiffs scramble to file their Motion for Default Judgment on September 4, 2025 (ECF No. 12). The Court entered the Order on Motion for Default Judgment on September 15, 2025, only eleven days after the Motion was filed (ECF No. 13). No hearing was held. The Default Judgment of $195,000 was entered on October 3, 2025; an Amended Default Judgment was entered October 7, 2025.

**H. The May 4, 2026 Hearing, Plaintiffs' Counsel's On-the-Record Admission of Non-Service.**

On May 4, 2026, the date noticed in the Order to Appear for Examination (ECF No. 24), Defendant appeared in person, pro se, before the Honorable Christopher B. Latham, in Department 1, Room 218 of the Jacob Weinberger United States Courthouse. Plaintiffs' counsel did not appear in person; counsel appeared by telephone, without a court reporter. (Williams Decl. ¶¶ 42-44.) On the record, Defendant stated that he had not been served with any papers in this matter. Plaintiffs' counsel responded by inquiring of the Court, on three separate occasions, with increasing emphasis, how Defendant knew about the hearing, and stated, in substance: "We haven't served him papers yet, how does he know

about this meeting?" and "I don't think we have served him papers yet." (Williams Decl. ¶ 43.)

The Court did not engage with Plaintiffs' counsel's repeated inquiry as to the source of Defendant's notice. The Court did not address Plaintiffs' counsel's admission of non-service. The Court instead acknowledged Defendant's voluntary appearance favorably on the record, continued the matter, and instructed counsel and Defendant to coordinate the rescheduling between themselves. No testimony was taken. No new examination date has been set. (Williams Decl. ¶¶ 44, 45.) The May 4, 2026 hearing thus contributes a contemporaneous, on-the-record admission by Plaintiffs' counsel of non-service of an order of this Court, corroborating, by way of pattern, the original wrong-ZIP service in 2025 that is the basis for Defendant's alternative ground under Rule 60(b)(4). The Court's on-the-record acknowledgment of Defendant's voluntary appearance is also material to the "good faith" and "non-culpable conduct" factors under Pioneer and Falk addressed below.

## IV.  LEGAL STANDARD

Federal Rule of Civil Procedure 60(b), applicable in bankruptcy adversary proceedings under Fed. R. Bankr. P. 9024, provides that the Court "may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; . . . or (6) any other reason that justifies relief."

The Ninth Circuit applies a strong policy favoring resolution on the merits, and doubts under Rule 60(b) are resolved in favor of granting relief. *Mendez v. Knowles*, 556 F.3d 757, 764 (9th Cir. 2009); *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000).

On a motion to vacate a default judgment, courts in the Ninth Circuit apply the disjunctive *Falk* factors: (1) prejudice to the plaintiff; (2) meritorious defense; and (3) culpable conduct by the defendant. Denial requires findings unfavorable on each factor. *Falk v. Allen*, 739 F.2d at 463; *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("Mesle").

For excusable neglect specifically, *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), considers: (1) prejudice to the non-movant; (2) length and impact of delay; (3) reason for the delay, including whether it was within the reasonable control of the movant; and (4) good faith. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000); *TCI Group*, 244 F.3d at 696.

## V. ARGUMENT

### A. The Default and Default Judgment Should Be Vacated Under Rule 60(b)(1) for Excusable Neglect.

Each *Pioneer* factor and each *Falk/Mesle* factor weighs decisively in Defendant's favor.

*1. Plaintiffs face no prejudice.* The Ninth Circuit has held that "to be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701. Loss of a quick litigation victory "is not the kind

of prejudice that justifies denying Rule 60(b) relief." *Id.* Here, prejudice is affirmatively disproved by Plaintiffs' own conduct. They sat on their default for **six months** and would have had it dismissed for want of prosecution but for this Court's sua sponte Notice of Intent to Dismiss (ECF No. 9). A litigant who could not be bothered to move for judgment until the court itself threatened dismissal cannot now claim prejudice from vacatur. The same documentary evidence is available today as on the day of default; indeed, much of the relevant evidence, Plaintiffs' own bank records (ECF Nos. 12-3, 12-4), is already filed.

*2. The length of delay is explained.* The Amended Default Judgment was entered October 7, 2025; this Motion is filed approximately 6-7 months later, *well within* the one-year outer limit of Rule 60(c)(1). Defendant did not learn of the entry of judgment in any meaningful way until Plaintiffs began collection activity in March 2026. Once on actual notice, Defendant moved with diligence to gather evidence and file. (Williams Decl. ¶¶ 37-38.)

*3. The reason for delay was overwhelmingly outside Defendant's reasonable control.* *Pioneer* expressly tolerates excusable neglect that includes "inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 388.

The decisive piece of evidence is **Defendant's treating rheumatologist's contemporaneous work-restriction directive of February 10, 2025**. The progress note of Dr. Firoozeh Motamedi expressly states: "Work Limitations. Patient reports difficulty

with daily activities and work due to symptoms. **Provide work restriction note for 4 weeks**." (Sealed Ex. E [2/10/2025 Motamedi Office Visit].) That four-week restriction covers, *by definition*, the period from February 10, 2025 through approximately March 10, 2025, the period during which the Clerk's entry of default issued (February 18, 2025) and continuing thereafter. The work-restriction directive is a contemporaneous, signed determination by Defendant's long-standing treating physician, supported by objective laboratory findings of severe systemic inflammation, that Defendant *lacked the functional capacity to undertake daily activities and work* during the precise period in question. That, alone, satisfies Pioneer's "circumstances beyond reasonable control" factor as a matter of law.

The work-restriction directive is supported by an extensive contemporaneous clinical record: two Emergency Department visits (1/30/25 and 2/2/25) within four days; intravenous Solu-Medrol 250 mg administered 2/2/25; high-dose oral prednisone (80 mg daily) throughout the response period; initiation of tocilizumab biologic immunosuppressant therapy 2/3/25; Schedule II opioid (Percocet) prescription with self-reported use of 1-2 tablets per day during the response period; objective markers of severe systemic inflammation (CRP > 100, ESR > 38, WBC > 18, ALT > 100). (Sealed Ex. E.) Each of these treatments and findings is independently documented in signed Kaiser progress notes contemporaneous with the events. The clinical record speaks for itself.

Multiple courts have found that medical conditions, particularly when combined with attorney abandonment, support relief from default. *See, e.g., Bateman*, 231 F.3d at

1225 (granting Rule 60(b)(1) relief where attorney's absence and personal hardship caused default); *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168-71 (9th Cir. 2002) (granting Rule 60(b)(6) relief where attorney's grossly negligent conduct caused default). The Ninth Circuit has held that an attorney's gross negligence, and *a fortiori* abandonment, is itself a basis for relief. *Tani*, 282 F.3d at 1168-71. Stadtmueller's conduct was abandonment in fact: a single notice email; no follow-up; no specific referral; no monitoring of the case despite knowing his client had no other counsel and was acutely medically incapacitated.

Defendant's circumstances during the response period were, in combination, *extraordinary*: (i) treating physician's contemporaneous work-restriction directive of 2/10/25 covering a four-week period that includes the date of default; (ii) two ED visits with objectively documented severe inflammation; (iii) IV high-dose corticosteroid administration; (iv) initiation of biologic immunosuppressant therapy; (v) Schedule II opioid prescription; (vi) chronic Adult-Onset Still's Disease; (vii) chronic severe MDD and PTSD documented at Kaiser back to 2021; (viii) homelessness; (ix) abandonment by counsel; and (x) father's December 2024 cardiac event. (Williams Decl. ¶¶ 22-36.) Each item alone might support relief; together they are dispositive.

**4. Defendant acted in good faith.** There is no allegation, nor any basis, to conclude that the failure to answer was strategic or tactical. Defendant did not have actual notice; was acutely medically incapacitated; and once on actual notice of the judgment, has moved to vacate as soon as feasible. *TCI Group*, 244 F.3d at 697 ("culpable conduct" under *Falk* requires "not simply nonappearance, but . . . willfulness, bad faith, or no excuse").

*5. Defendant has multiple meritorious defenses.* A defendant's burden in showing meritorious defenses is "not extraordinarily heavy." *TCI Group*, 244 F.3d at 700. The defendant need only "allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. Defendant easily clears that bar:

(a) **The fraud theory under §523(a)(2)(A) collapses on Plaintiffs' own evidence.** To prove §523(a)(2)(A), Plaintiffs must prove scienter. *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000); *Field v. Mans*, 516 U.S. 59, 70 n.9 (1995). Plaintiffs' own bank records (ECF Nos. 12-3, 12-4) show CWM contributed approximately **$350,000** to the project, against Plaintiffs' combined $200,000. A fraudster does not invest 175% of the purportedly defrauded sum from his own pocket.

(b) **The §523(a)(6) theory likewise collapses.** §523(a)(6) requires "willful and malicious injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998); *In re Su*, 290 F.3d 1140, 1142 (9th Cir. 2002). A failed business venture in which Defendant's own company over-contributed by $150,000 cannot satisfy that exacting standard.

(c) **Plaintiffs' own conduct precludes recovery.** Plaintiff Anderson, a sophisticated business person, undertook responsibility for drafting a more elaborate operating agreement (working with his own counsel) that was never executed. Plaintiffs were responsible under the venture for marketing, signage, exterior vinyl wraps, project administrative paperwork, and other launch and promotional activities, and Plaintiffs delivered none of those obligations. Plaintiffs further refused to contribute additional

capital when CWM later requested it despite the cost overruns; demanded that CWM shut the project down rather than complete it; and themselves underpaid their stated equity commitments by approximately $5,000 (contributing $195,000 against the $199,998 commitment). These failures constitute breaches of Plaintiffs' fiduciary duties as members of WCCW under Delaware law (the governing law per Operating Agreement § 12) and substantially contributed to the project's underperformance and eventual closure.

(d) **The Operating Agreement requires arbitration in Delaware.** Operating Agreement § 13. Plaintiffs bypassed both mediation and arbitration.

(e) **The damages calculation overstates funds "obtained by" Defendant.** Plaintiffs' alleged $195,000 in losses represents capital contributions to WCCW (a separate Delaware LLC), not funds personally obtained by Defendant. The funds were deployed to construction, vendors, and equipment that today operate as Sun Day Carwash at 310 South Vincent Avenue. Following the cost-overrun meeting at Nick Ashton's apartment in December 2024, approximately $95,000 of CWM's continuing advances was further allocated by agreement of the parties to a CWM-to-WCCW loan, of which CWM has never been repaid. (Williams Decl. ¶ 11.) To the extent any portion of Plaintiffs' contributions is recoverable as nondischargeable fraud, the analysis must focus on what Defendant personally received, not on Plaintiffs' gross contributions to a separate entity. *See Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *Archer v. Warner*, 538 U.S. 314, 320-21 (2003).

(f) **Defendant intends to assert counterclaims and to compel arbitration.** Upon vacatur, Defendant intends to file an Answer asserting the foregoing affirmative defenses, together with counterclaims against Plaintiffs for: (i) breach of Section 13 of the Operating Agreement (Plaintiffs' bypassing of contractually mandated mediation and Delaware arbitration through filing of the State Court Action and this Adversary Proceeding); (ii) breach of Plaintiffs' fiduciary duties as members of WCCW under Delaware law; and (iii) breach of contract for Plaintiffs' failure to perform their non-financial obligations under the venture. Defendant will simultaneously move to compel mediation and binding arbitration in Delaware pursuant to Operating Agreement § 13 and the Federal Arbitration Act, 9 U.S.C. § 4. *See Continental Ins. Co. v. Thorpe Insulation Co.*, 671 F.3d 1011, 1020-22 (9th Cir. 2012) (recognizing presumption in favor of arbitration of non-core matters in bankruptcy). Defendant further intends to seek sanctions under Federal Rule of Bankruptcy Procedure 9011 for Plaintiffs' filings made in violation of the Operating Agreement's arbitration clause and Plaintiffs' material misrepresentation in Complaint paragraph 25. Defendant's counterclaims will seek compensatory damages, attorneys' fees and costs, specific performance compelling arbitration, and punitive damages where supported by the evidence.

*6. Defendant's conduct was not culpable.* Under *Mesle*, culpable conduct exists when the defendant has "received actual or constructive notice of the filing of the action and intentionally failed to answer." 615 F.3d at 1092. Where, as here, the moving party did not receive actual notice in time to respond, was acutely medically incapacitated under a

treating physician's contemporaneous work-restriction order during the response window, and was abandoned by counsel, the conduct cannot be culpable as a matter of law.

### B. The Default Judgment Should Independently Be Vacated Under Rule 60(b)(3) for Misrepresentation.

Rule 60(b)(3) authorizes relief from a judgment procured by "fraud . . ., misrepresentation, or misconduct by an opposing party." To prevail under (b)(3), a movant must show by clear and convincing evidence that the verdict was obtained through misconduct that prevented full and fair presentation. *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000); *Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004).

Paragraph 25 of the Complaint, verified by Plaintiff Anderson and offered to this Court as a basis for the judgment, alleges: "To date, the car wash remains non-operable." That statement was false when made and is demonstrably false today. The very same car wash, at the very same address, using the very same equipment that CWM installed, is operating today as "Sun Day Carwash." (Williams Decl. ¶ 14; RJN Exs. 3-5.) The City of West Covina itself featured the operating business in an official Instagram post on December 15, 2025.

The misrepresentation was material. "Car wash remains non-operable" was deployed in the Complaint to support the inference that the funds Plaintiffs invested were dissipated, lost, or wasted, i.e., that Defendant had deceived them or willfully injured them. In fact, the funds were converted to tangible, operating, productive assets. The

misrepresentation went directly to the heart of both the §523(a)(2)(A) and §523(a)(6) theories.

## C. As an Alternative Ground, the Judgment Is Voidable for Defective Service Under Rule 60(b)(4).

Federal Rule of Bankruptcy Procedure 7004(b)(9) authorizes service by mail to the debtor at the petition address. The address here corresponds to the petition address, but the ZIP code is wrong: every certificate of service records service mailed to ZIP code **92121**, a different ZIP code than the correct 92128 for the address. The wrong ZIP routes mail to a sorting facility serving a different community, where the destination address does not exist. The defect vitiates the presumption of receipt. *See Moody v. Bucknum (In re Moody)*, 105 B.R. 368, 371 (S.D. Tex. 1989); *In re Schoon*, 153 B.R. 48, 49-50 (Bankr. N.D. Cal. 1993). Rule 60(b)(4) recognizes no time limitation other than "reasonable time." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Defendant pleads (b)(4) as an alternative ground only; the principal grounds for relief are (b)(1) and (b)(3).

## D. The Court Should Stay All Collection Activity Pending Resolution of This Motion.

Under Federal Rule of Civil Procedure 62(b) (made applicable by Fed. R. Bankr. P. 7062), this Court has broad discretion to stay execution. Each of the four *Nken* factors favors a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Defendant has a substantial likelihood of success in light of the contemporaneous medical records and Plaintiffs' own bank records already in the file. Without a stay, Plaintiffs may attach assets and conduct a debtor's examination on May 4, 2026 (ECF No. 24) on a judgment that this Motion seeks

to vacate. The balance of harms favors Defendant: a stay imposes only delay on Plaintiffs, who themselves voluntarily delayed six months. The public interest favors merits adjudication. *Falk*, 739 F.2d at 463.

## VI.  CONCLUSION

For each of the foregoing reasons, and on each of three independent grounds, defendant Andrew Paul Williams respectfully requests that this Court enter an order: (i) vacating the Clerk's Entry of Default (ECF No. 7); (ii) vacating the Order on Plaintiffs' Motion for Default Judgment (ECF No. 13), the Default Judgment (ECF No. 15), and the Amended Default Judgment (ECF No. 17); (iii) granting Defendant 21 days from the date of the Order to file an Answer to the Complaint; (iv) staying all collection activity pending further order of the Court; and (v) granting such other and further relief as the Court deems just and proper.

Dated: _____5/12_____, 2026

Respectfully submitted,

_____

Andrew Paul Williams

Defendant, Pro Se